# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COURT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DR FOFO, LLC d/b/a PLANET FOLLYWOOD and ELLIOT ASHLEY KOHN d/b/a DJ E, <br><br> Defendants. | Case No.:  2:17-cv-03327-DCN <br><br> **COMPLAINT** <br> **COPYRIGHT INFRINGEMENT,** <br> **§17 U.S.C. § 501** <br><br> **NON- JURY** |

The Plaintiff, Phoenix Entertainment Partners, LLC ("Phoenix"), by its undersigned counsel, hereby complains of the Defendants DR FOFO, LLC d/b/a Planet Follywood ("FOFO") and Elliot Ashley Kohn d/b/a DJ E (individually "Kohn," collectively with FOFO, the "Defendants," and each individually as a "Defendant") and for its Complaint alleges as follows:

## JURISDICTION OF THE COURT

1. This is an action for copyright infringement in which Defendants stand accused of making copies of and distributing karaoke accompaniment tracks, which tracks are the subject of Phoenix's copyrights, without authorization.

2. This action arises under § 501 of the Copyright Act of 1976, 17 U.S.C. § 501, as amended.

3. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States. This Court further has jurisdiction pursuant to 28 U.S.C. § 1338(a), in that this civil action arises under

acts of Congress relating to copyrights.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this State and judicial district.

5. This Court has personal jurisdiction over each Defendant, based upon Defendants' residence in this State and judicial district and conduct of significant business here, and in that the acts of which Defendants stand accused were undertaken in this State and judicial district.

## THE PLAINTIFF

6. Phoenix is a North Carolina limited liability company having its principal place of business in Pineville, North Carolina.

## THE DEFENDANTS

7. Upon information and belief, FOFO is a limited liability company organized under the State of South Carolina that operates an eating and drinking establishment known as Planet Follywood in Folly Beach, South Carolina at which karaoke entertainment services are provided.

8. Upon information and belief, Kohn is an individual who operates a mobile entertainment business under the name DJ E, and who operates the equipment and provides karaoke-related services.

## BACKGROUND FACTS

9. Karaoke is a popular form of participatory entertainment commonly found in bars and restaurants and other types of venues throughout the United States.

10. The basic premise of a karaoke show is that the venue hosting the show provides patrons with access to a sound system and specially prepared karaoke accompaniment tracks, so that individual patrons may perform for the crowd.

11. Generally, a "karaoke accompaniment track" is an audiovisual work comprising a

re-recorded version of a popular song without the lead vocals synchronized to a graphical component containing a lyric display, cueing information, and other information.

12. When a karaoke accompaniment track is publicly performed, the graphical component is displayed to the patron who is performing and may be displayed to the crowd as well.

13. Venues that offer karaoke entertainment, including FOFO, do so as part of a commercial transaction wherein the venues supply their patrons with karaoke entertainment services in exchange for their patronage of the establishment and the purchase of food and beverages.

14. The purchase and consumption of alcoholic beverages in connection with karaoke shows is particularly encouraged to enable patrons to overcome inhibitions against singing in public.

15. Most venues that offer karaoke entertainment, including FOFO, hire mobile entertainment operators, such as Kohn, to provide the karaoke entertainment services on the venues' behalf.

16. Phoenix is the owner of SOUND CHOICE®, a federally registered trademark, in connection with which Phoenix licenses and distributes karaoke tracks and, primarily through licensees, provides karaoke entertainment services.

17. Phoenix is also the owner of CHARTBUSTER KARAOKE®, a federally registered trademark, in connection with which Phoenix distributes karaoke tracks.

18. In 2015, Phoenix acquired the CHARTBUSTER KARAOKE brand from Piracy Recovery, LLC, which in turn acquired the brand from Tennessee Production Center, Inc., when Tennessee Production Center ceased operations.

19. SOUND CHOICE-branded and CHARTBUSTER KARAOKE-branded karaoke tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers. According to some estimates, as corroborated by investigative data, more than 70% of all accompaniment tracks played at commercial karaoke shows in the United States are either SOUND CHOICE- or CHARTBUSTER KARAOKE-branded tracks, with SOUND CHOICE-branded tracks alone commanding a market share that exceeds 50%.

20. The popularity of CHARTBUSTER KARAOKE and SOUND CHOICE karaoke tracks derives from the market's perception that the recordings are usually the most faithful to the sound of the original recording artist, a characteristic highly valued by karaoke singers.

21. CHARTBUSTER KARAOKE and SOUND CHOICE karaoke tracks are also perceived by the market as providing highly accurate singing cues as part of the video display, a characteristic that is also highly valued by karaoke singers.

22. Likewise, the association of the CHARTBUSTER KARAOKE and SOUND CHOICE brand with a mobile entertainment operator's karaoke business and/or with a venue's karaoke entertainment offerings confers on the operator and venue a perception in the marketplace – and among karaoke patrons – of legitimacy and professionalism.

23. Like all karaoke tracks, SOUND CHOICE and CHARTBUSTER KARAOKE tracks are easily and frequently (though illicitly) duplicated and shared among karaoke professionals for the express purpose of making those karaoke tracks available at commercial karaoke shows.

24. Specifically, karaoke accompaniment track users have used the available technology to place the duplicated contents of one purchased disc on two or more computer systems for simultaneous use in karaoke shows; to place the duplicated contents of their patrons'

4

discs on their own computer hard drives for use in karaoke shows; to "swap" song files with other users; to obtain and share karaoke tracks via file-sharing sites and torrents; to purchase computer hard drives that were pre-loaded with duplicates of karaoke tracks; and, in cases when discs were actually purchased, to sell any original media they might have owned in the secondary market once they have made copies.

25. This distribution allows karaoke accompaniment track users to gain the benefit of using SOUND CHOICE- and CHARTBUSTER KARAOKE-branded karaoke tracks without paying for original media.

26. To the extent that Defendants have undertaken any of the activities described in the preceding paragraphs, those activities have been undertaken wholly without any form of permission from or payment to Phoenix.

## THE RIGHTS OF THE PLAINTIFF

27. Phoenix is the owner of the copyrights in the audiovisual works listed in Annex A hereto ("the Copyrights"), by virtue of an assignment instrument from Piracy Recovery, LLC, dated May 23, 2017.

28. As the owner of the copyrights in the audiovisual works, Phoenix has the exclusive rights, *inter alia*, to reproduce the works in copies; to distribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease, or lending; and to perform the works publicly.

29. Each of the claims of copyright in the audiovisual works identified in Annex A was registered with the United States Copyright Office prior to the commencement of this action, prior to the discovery by Phoenix of Defendants' acts of copyright infringement, and prior to the commencement of Defendants' acts of copyright infringement.

30. The audiovisual works are the subject of separate copyright from the copyright in the underlying musical compositions they embody.

## THE ACTIVITIES OF DEFENDANTS

**A.     Defendants' Unauthorized Use of Phoenix's Copyrighted Works**

31. FOFO hosts karaoke shows comprising karaoke entertainment services at its establishment.

32. Upon information and belief, FOFO contracted with third-party operator Kohn as its agent to supply karaoke entertainment services to FOFO's patrons.

33. Upon information and belief, Kohn and FOFO advertised the availability of karaoke entertainment services at FOFO's venue at specific times, in order to inform potential patrons of the services and to encourage those potential patrons to visit FOFO's venue at those times.

34. In order to supply karaoke entertainment services to a venue such as FOFO, Kohn prepares and executes a karaoke show by acquiring, or acquiring access to, appropriate sound equipment for playing karaoke accompaniment tracks; connecting the sound equipment to a source for karaoke accompaniment tracks; causing selected karaoke accompaniment tracks to be played over the sound equipment; controlling the organization and flow of the performances; encouraging FOFO's patrons to purchase food and/or beverages and tip their servers and acting as the on-microphone emcee of the show.

35. Kohn copied the audiovisual works identified in Annex A, the copyright in which belongs to Phoenix.

36. Kohn then distributed the copies he made of the audiovisual works identified in Annex A to FOFO's patrons, and likely patrons of other venues, when he provided karaoke

6

entertainment services, by making those copies available for use and for public performance by patrons.

37. Kohn also caused the audiovisual works identified in Annex A to be publicly performed at at least one venue where he provided karaoke entertainment services.

38. Kohn did not have Phoenix's permission to make or acquire the copies, to distribute the copies to the patrons, or to publicly perform the audiovisual works.

39. Kohn's acts of reproduction, distribution, and public performance of the audiovisual works were undertaken in derogation of Phoenix's exclusive rights in those audiovisual works.

40. As a result of those unauthorized acts of reproduction, marking, distribution, and public performance, Phoenix has been damaged.

41. Phoenix believes that Kohn's acts of copyright infringement are not limited to the works identified in Annex A, but that those acts extend to many such works in which Phoenix owns the copyright, and that discovery will reveal the extent of that infringement.

42. The provision of the services as described above is an essential part of a commercial transaction wherein the patrons purchase food and beverages and receive access to the works and to the services in connection with their patronage, even if the patrons do not directly pay for access to the works or the services.

43. When the karaoke shows are ongoing, the shows are generally the principal entertainment focus of FOFO's establishment.

44. FOFO derives value from the karaoke shows in the form of increased patronage and increased sales of food and beverages.

45. Upon information and belief, FOFO has advertised the availability of karaoke

shows on its premises, via its own advertising apparatus and as an activity attributable to its business, rather than as adjunct or auxiliary to its businesses.

46. FOFO has had actual knowledge of the foregoing activities being undertaken at its establishment.

47. Specifically, FOFO was notified by Phoenix by a letter dated March 9, 2017 of the unlicensed, infringing character of the karaoke entertainment services being provided in its establishment.

48. On March 9, 2017 Phoenix mailed a warning letter in a package addressed to Florence O'Donnell, Planet Follywood, 32 A Center St., Folly Beach, SC 29439, via United Parcel Service. According to the records of United Parcel Service that package which contained the warning letter was delivered and signed for on March 10, 2017.

49. On March 9, 2017 Phoenix shipped a warning letter in a package addressed to Florence O'Donnell, the Registered Agent for DR FOFO, LLC, 502 E. Ashley Ave, Folly Beach, SC 29439, via United Parcel Service. According to the records of United Parcel Service that package which contained the warning letter was delivered and signed for on March 10, 2017.

50. In the letter, FOFO was offered information about licensing and compliance programs that Phoenix offers to venues that feature karaoke entertainment, along with the opportunity to bring its karaoke entertainment services into compliance with the law and with Phoenix's policies regarding the use of its intellectual property.

51. In particular, FOFO was offered the opportunity, at no charge, to request, via Phoenix's Safe Harbor program, that Phoenix evaluate the licensing status and needs of its karaoke entertainment provider and to avoid liability as long as the venue took heed of Phoenix's evaluation and acted accordingly.

52. FOFO did not take advantage of the Safe Harbor program.

53. On May 17, 2017, Phoenix commenced litigation against Defendants for trademark infringement, unfair competition and the violation of South Carolina's Unfair Trade Practices Act relating to these allegations; namely, Civil Action no. 2:17-cv-01270-DCN.

54. Despite the above offers, the pending lawsuit and its knowledge of the unlicensed, infringing character of the karaoke entertainment services being provided in its establishment, FOFO has not yet elected to bring its karaoke entertainment services into compliance.

**B.   The basis for imposing secondary liability including contributory and vicarious liability on FOFO**

55. As noted above, Kohn committed copyright infringement of each of the audiovisual works identified in Annex A by copying, distributing, and publicly performing the works without a license to do so.

56. Specifically, Kohn distributed copies of the audiovisual works by making those works available for public performance at karaoke shows.

57. Kohn distributed copies of the audiovisual works at FOFO's establishment.

58. Kohn also publicly performed the audiovisual works at FOFO's establishment.

59. FOFO has the right to control the means and the details of the process by which its third-party agent accomplishes its respective tasks, including, without limitation, controlling the dates and starting and stopping times of shows, determining whether particular content (such as offensive-language content) is permitted to be played at shows, determining the style and genre of music played at shows, and determining whether the third-party agent is permitted to use FOFO's equipment (such as television displays, sound equipment, stage, etc.) as part of the shows.

60. In particular, FOFO has the right to control whether or not the activities occur on

9

its premises.

61. As noted previously, FOFO had knowledge of its agent's infringing activities.

62. Despite this knowledge and the filing of a lawsuit, FOFO continued to use Kohn to commit direct infringement of Phoenix's intellectual property during the course of providing karaoke entertainment services to its patrons.

63. FOFO had the right and ability to supervise Kohn's activities in its establishment, including, without limitation, the right and ability to determine whether Kohn provided karaoke entertainment services involving Phoenix's audiovisual works.

64. FOFO knew or had reason to know, based on the amounts it was paying Kohn to provide the services, its interaction with Kohn, and its knowledge of Kohn's infringement, that Kohn was unlikely to be able to respond for significant damages for infringement.

65. The arrangement between FOFO and Kohn exploited Kohn's marginal financial condition in two ways: first, by reducing the amount FOFO had to pay Kohn to provide the services in a manner that would be profitable to Kohn; and second, by attempting to allocate the burden of any claims of infringement to Kohn, an undercapitalized "dummy" operation, in a naked effort to avoid financial responsibility and liability for the infringement while remaining the principal beneficiary of the infringement.

66. In short, the arrangement between FOFO and Kohn is a sham designed to reap the rewards of infringement while escaping the liabilities.

67. Despite FOFO having knowledge of the infringing character of the activities and the ability to control whether those activities occur, FOFO elected not to stop the infringement from occurring, instead continuing to enjoy the benefits of the infringement.

68. As such, to the extent that it is not directly liable as an infringer, FOFO is

secondarily liable for the continuing infringement that has occurred and is occurring on its premises.

C.  **Defendants' pattern of infringing conduct**

69.  Defendants' conduct as described above with respect to Phoenix's copyrights extends as part of a large-scale program of infringing activities and piracy.

70.  Essentially, Defendants, and particularly Kohn, with FOFO as the willing beneficiary, have built an entire business model and moneymaking scheme premised on a competitive advantage derived from the infringement of the intellectual property rights of others, including Phoenix.

71.  Defendants' wrongful conduct exerts illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the unlicensed use of pirated material belonging to Phoenix, thereby diminishing the value of licenses and permissions in the hands of Phoenix, its subsidiary, and its licensees.

72.  The diminution of the value of licenses encourages or forces karaoke operators to forego licenses in order to compete profitably.

73.  Upon information and belief, Defendants' misconduct has cost Phoenix in excess of $50,000 in revenue from legitimate sources crowded out of the market by their wrongful conduct.

**FIRST CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501**

74.  Each and every allegation set forth in the preceding paragraphs is hereby realleged and reiterated as fully as if set forth verbatim herein.

75.  Phoenix's copyrights in the audiovisual works listed in Annex A are valid and subsisting.

76. Kohn reproduced or caused to be reproduced each of the works listed Annex A, in violation of Phoenix's exclusive rights, without Phoenix's permission.

77. Kohn additionally made those unauthorized copies of the works available to venue patrons for use, thereby distributing the works in violation of Phoenix's exclusive rights, without Phoenix's permission.

78. Kohn additionally caused or permitted the works to be publicly performed, in violation of Phoenix's exclusive rights, without Phoenix's permission.

79. FOFO permitted Kohn's acts of public performance to occur on its premises.

80. FOFO had the right and ability to supervise Kohn in the activities that constituted direct copyright infringement by Kohn.

81. FOFO had a financial interest in the acts of public performance that constituted direct copyright infringement on the part of Kohn.

82. As such, FOFO is vicariously liable for that copyright infringement.

83. FOFO also had actual knowledge of the copyright infringement occurring on its premises.

84. Each Defendants' acts as identified above constitute knowing, and, therefore, willful, infringement of Phoenix's copyright in the audiovisual works.

85. Phoenix has been damaged by each Defendant's infringing activities.

86. Unless enjoined by the Court, each Defendant's infringing activities as described above will continue unabated and will continue to cause harm to Phoenix.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Phoenix prays for judgment against each of the Defendants, jointly and severally, and that the Court:

A. Find that each Defendant has committed acts of infringement of works in which Phoenix owns the copyright, in violation of 17 U.S.C. § 106;

B. Enter judgment against each Defendant and in favor of Phoenix on all applicable counts;

C. Award to Phoenix statutory damages for the acts of copyright infringement, pursuant to 17 U.S.C. § 504, if available, or actual damages, if not;

D. Award to Phoenix treble, punitive, or otherwise enhanced damages, as available, upon a finding that any Defendant acted willfully in the conduct of its infringement;

E. Order that all computer disks, drives, or other media belonging to Defendants, which media enable Defendants to engage in infringement as described herein, to be delivered up or seized for destruction;

F. Grant Phoenix preliminary and permanent injunctive relief against further infringement of its copyrights by each Defendant;

G. Award Phoenix its costs of suit and attorney's fees, to the extent not awarded above; and

H. Grant Phoenix such other and further relief as justice may require.

Respectfully submitted this the 8tth day of December, 2017.

                         BELZER PC

                         _s/Michael C. Cerrati_____
                         Michael C. Cerrati, Esq. (Fed. Bar No. 10488)
                         7 Office Way, Suite 200
                         Hilton Head Island, SC 29928
                         912-236-3001 office
                         843-271-6658 direct
                         912-236-3003 fax
                         mcerrati@belzerlaw.com
                         *Attorney for Plaintiff*

## ANNEX A

## COPYRIGHT REGISTRATIONS

| Subject Work | Style of Artist | © Reg. No. |
| --- | --- | --- |
| New York State of Mind | Billy Joel | SR0000365175 |
| From the Window Up Above | Wanda Jackson | SR0000375893 |
| Takin' Care of Business | Bachman-Turner Overdrive | SR0000367547 |
| Blue Moon of Kentucky | Bill Monroe | SR0000365175 |