IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:17-cv-03327-DNC |
| v. | ) ) | **ORDER** |
| DR FOFO, LLC *d/b/a Planet Follywood*, and ELLIOT ASHLEY KOHN *d/b/a DJ E*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendant Elliot Ashley Kohn's ("Kohn") motion to dismiss, ECF No. 9. For the reasons set forth below, the court grants the motion to dismiss.

## I. BACKGROUND

This matter arises from Kohn's allegedly infringing use of four of Phoenix Entertainment Partners, LLC's ("Phoenix") copyrighted works. Phoenix is a North Carolina limited liability company. ECF No. 1 ¶ 6. Planet Follywood is an establishment operated by DR FOFO, LLC ("FOFO"), a South Carolina limited liability company in Folly Beach, South Carolina. Id. ¶ 7. Kohn is a DJ and entertainer who provides karaoke-related services. Id. ¶ 8.

Phoenix owns the copyright to four karaoke accompaniment tracks (the "Tracks") by virtue of an assignment instrument from Piracy Recovery, LLC.[1] Id. ¶ 27. These

---

[1] The four tracks are "New York State of Mind" in the style of Billy Joel, "From the Window Up Above" in the style of Wanda Jackson, "Takin' Care of Business" in the

1

karaoke accompaniment tracks are audiovisual works that consist of re-recorded versions of songs without lead vocals. Id. ¶ 11. The tracks also include visual components such as lyric displays and cueing information. Id. Each of the Tracks is part of a compilation of karaoke tracks that is registered as a sound recording with the United States Copyright Office. Id. ¶ 29; ECF No. 10-1.[2] Two of the Tracks are registered under the same compilation, SR0000365175, and the other two Tracks are each registered under different compilations, SR0000375893 and SR0000367547 respectively. ECF No. 10 at 2. The compilations are sold on compact discs plus graphics (CD+Gs). Id. at 4.

Phoenix alleges that FOFO contracted with Kohn to provide karaoke entertainment services at Planet Follywood. ECF No. 1 ¶ 32. Phoenix then contends that Kohn copied the Tracks and distributed the copies to FOFO's patrons for karaoke performances without Phoenix's permission. Id. ¶¶ 35–38. In addition, Phoenix alleges that FOFO had the right to control Kohn's actions on its premises, knew about Kohn's infringement of the Tracks, and did nothing to stop Kohn, making FOFO secondarily liable for Kohn's infringement. Id. ¶¶ 60–61, 67–68.

Phoenix filed the instant suit on December 8, 2017, bringing a cause of action for copyright infringement under 17 U.S.C § 501. Id. ¶¶ 74–86. Kohn filed a motion to dismiss on January 24, 2018, ECF No. 9, and Phoenix filed its response on February 7,

---

style of Bachman-Turner Overdrive, and "Blue Moon of Kentucky" in the style of Bill Monroe. ECF No. 1 at 14.
[2] If a compilation of work, such as karaoke tracks, is registered, the individual works will also be registered. See Section III.B.

2018, ECF No. 10. Phoenix subsequently filed a notice of additional non-binding authority on April 11, 2018. ECF No 11.[3] The motion is ripe for the court's review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[3] This notice attached pleadings and a court order from a similar case filed by Phoenix in the United States District Court for the District of Colorado. The attachments include the defendants' motion to dismiss, the defendants' reply in support of their motion to dismiss, and the District of Colorado's order denying the motion to dismiss as to the copyright infringement claim. ECF No. 11. Phoenix pointed to the copyright infringement issue in the Colorado case, which is the same issue in the instant case. Id. at 1. The court acknowledges the District of Colorado's opposite ruling in its motion but is unable to discern the reasoning underpinning the District of Colorado's decision from its brief order denying the motion to dismiss as to the copyright infringement claim. Having extensively researched the issues raised in this motion to dismiss, this court respectfully reaches a different conclusion.

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

Kohn alleges that the copyrights for the Tracks were not properly registered, and as a result, Phoenix may not bring a copyright infringement action for use of the Tracks. Kohn first argues that the Tracks were improperly registered as only sound recordings and not also audiovisual works. He then argues that single work registration does not exempt Phoenix from separately registering the Tracks as audiovisual works, because audiovisual work is not a class of work for which single work registration is available.

**A. Registration Class**

Kohn's first argument is that the Tracks are only registered as sound recordings when they should also be registered as audiovisual works. ECF No. 9-1 at 4–5. He claims that the fact that there are no copyright registrations for the audiovisual elements of the Tracks is fatal to Phoenix's claim because valid copyright registration is required to bring a copyright infringement claim, and without copyright registrations for the audiovisual elements, Phoenix's copyrights for the Tracks are invalid. Id. at 4. Phoenix does not respond directly to this argument but instead argues that the registrations are valid as single work registrations, ECF No. 10 at 3–7, which is discussed in greater detail in Section III.B.

Copyright infringement consists of two elements: (1) the ownership of a valid copyright; and (2) the copying of the original elements of the copyrighted work. Feist

Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In order to institute an action for infringement, the copyright must be registered with the United States Copyright Office. 17 U.S.C. § 411(a). While this requirement is not jurisdictional, Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 169 (2010), "[r]egistration is a prerequisite for a copyright infringement action," Darden v. Peters, 488 F.3d 277, 285 n.3 (4th Cir. 2007). As a result, "[f]or plaintiffs to state a claim for which relief can be granted," the copyright that was allegedly infringed must be properly registered. Jefferson Airplane v. Berkeley Sys., Inc., 886 F. Supp. 713, 715 (N.D. Cal. 1994).

Federal regulations divide copyrightable works into different classes for the purpose of registration, include "Class PA" for audiovisual works and "Class SR" for sound recordings. 37 C.F.R. § 202.3(b)(ii), (iv). The Copyright Act defines "audiovisual works" as "works that consist of a series of related images which are intrinsically intended to be shown by the use of machines . . . together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." 17 U.S.C. § 101. Courts have found karaoke devices to be audiovisual works for the purpose of copyright registration. Leadsinger, Inc., v. BMG Music Pub., 512 F.3d 522, 527–28 (9th Cir. 2008); ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 65 (2d Cir. 1996), abrogation on other grounds recognized by Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010). The Ninth Circuit explained that "the visual representation of successive portions of song lyrics that Leadsinger's [karaoke] device projects onto a television screen constitutes 'a series of related images,'" and "its images of successive portions of song lyrics are 'intrinsically intended to be shown by the use of machine . . . together with accompanying sounds.'" Leadsinger, Inc., 512 F.3d at

528.  In addition, "CD+G's constitute 'audiovisual works,' since they 'consist of a series of related images'—the lyrics—'together with accompanying sounds'—the music." ABKCO Music, Inc., 96 F.3d at 65 (quoting 17 U.S.C. § 101).

Because not all work neatly fits into just one class of work, copyright regulations provide:

> In cases where a work contains elements of authorship in which copyright is claimed which fall into two or more classes, the application should be submitted in the class most appropriate to the predominant type of authorship in the work as a whole.  However, in any case where registration is sought for a work consisting of or including a sound recording in which copyright is claimed, the application shall be submitted on Form SR.

37 C.F.R. § 202.3(b)(2)(ii)(C); see also 2 Nimmer on Copyright § 7.18 (2018) ("Given the existence of multimedia forms of expression, the question arises as to registration of works that span several categories.  In such cases, the appropriate classification should be chosen depending on which type of authorship predominates.").

While 37 C.F.R. § 202.3(b)(2)(ii)(C) provides copyright registrants with some flexibility in choosing the registration form for their multimedia works, courts have indicated that when the United States Copyright Office provides additional guidance on which form should be used, the registrant must follow the guidance.  See Jefferson Airplane, 886 F. Supp. at 716–17.  Courts give deference to the Copyright Office's interpretation of the Copyright Act when courts find the interpretation to be persuasive. EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79, 97 (2d Cir. 2016); see also Ala. Stock, LLC v. Houghton Mifflin Harcourt Pub. Co., 747 F.3d 673, 684–85 (9th Cir. 2014) ("[W]here the Copyright Office has announced its interpretation primarily through 'internal agency manuals [and] opinion letters, we defer to the Copyright Office's views expressed in such materials only to the extent that those interpretations

have the power to persuade.'" (citation omitted)). This interpretation exists in agency manuals, opinion letters, and copyright forms. Ala. Stock, LLC, 747 F.3d at 684–85 & 685 n.52.

In EMI Christian Music Grp., Inc., the Second Circuit found persuasive a circular issued by the Copyright Office discussing the use of a Form SR to register both sound recordings and their associated images. 844 F.3d at 97. The copyright regulations only permitted the use of a Form SR to register literary, dramatic, and musical works associated with sound recordings, yet the plaintiff registered a sound recording and associated images using Form SR. Id. at 96. The court explained that it was "persuaded by the Copyright Office's apparent view that there is no logical distinction between 'literary' works and 'visual' works associated with a sound recording such that the former is properly registered on a Form SR but the latter is not." Id. at 97. As a result, the court held that the plaintiff's registration using a Form SR was valid. Id.

Courts have used guidance from the Copyright Office when determining if copyright claimants have properly classified their work during copyright registration. In Jefferson Airplane, the defendant argued that the plaintiff's copyright registration using the form for Class N[4] for its musical album only covered the sound recording and not the cover art, and as a result, the cover art was unregistered. 886 F. Supp. at 716. The court examined "the language defining class n [sic] and subsequent pronouncements and practices of the Copyright Office" and determined that a separate registration was required for the artwork. Id. The court relied on the Copyright Office Examination Practices, which at the time specified that "[r]egistration in Class N cannot extend

---

[4] At the time, a sound recording was registered under Class N.

7

protection to copyrightable matter appearing on a jacket, liner notes, or container, etc., even though such items form a part of the deposit for registration in Class N." Id. The court also examined a circular from the Copyright Office that explained that a separate registration must be made for sound recordings and copyrightable material on disc jackets. Id. at 716-17. After considering these two pieces of evidence along with a declaration from the Register of Copyrights, the court found that the Class N registration did not cover the artwork, and as such, the artwork was not properly registered. Id. at 717.

In contrast, in South Beach Skin Care, Inc. v. Dermaset, Inc., 2014 WL 11958623 (S.D. Fla. Aug. 18, 2014), the defendant argued that the only material on the plaintiff's website with a registered copyright was the text because the copyright was registered in the TX (textual work) classification. Id. at *4. The court held that there was "no reason to preclude protection beyond the textual content" because 37 C.F.R. § 202.3(b)(2)(ii)(C) allowed for claiming copyright in two or more classes, and the defendant did not provide any authority to suggest that a limitation like the one in Jefferson Airplane existed for textual works. Id. The court distinguished Jefferson Airplane because, at the time of Jefferson Airplane, the Copyright Office Examination Practices provided an explicit rule that registration in Class N does not protect copyrightable material on an album jacket, so Class N registration did not cover an album's cover art. Id. In contrast, there was no such explicit rule in South Beach Skin Care, Inc. that stated Class TX registrations do not include other copyrightable works contained within the textual work. Id. Thus, the court in South Beach Skin Care, Inc. held that the copyright for the plaintiff's website covered all of the content on the plaintiff's website, including the non-text content, and was valid.

Id. Therefore, while courts will generally allow for flexibility in class registration when a work may fall into two or more classes, that flexibility will be tempered when there is additional Copyright Office guidance on registering a particular class of work.

Here, the copyrights for the compilations containing the Tracks were registered as sound recordings on March 4, 2005 by Tennessee Production Center, Inc., the original copyright claimant.[5] In its complaint, Phoenix characterizes the Tracks as audiovisual works. ECF No. 1 ¶¶ 11, 27– 30, 35–39, 55–58, 63, 75, 84. Moreover, Phoenix describes a karaoke accompaniment track as "a re-recorded version of a popular song without the lead vocals synchronized to a graphical component containing a lyric display, cueing information, and other information." Id. ¶ 11. This description comports with the description of audiovisual works provided in the Copyright Act as well as the description of karaoke devices found to be audiovisual works. Leadsinger, Inc., 512 F.3d at 528; ABKCO Music, Inc., 96 F.3d at 65. Moreover, the compilations containing the Tracks are sold on CD+Gs, which are audiovisual works. ABKCO Music, Inc., 96 F.3d at 65. As a result, both the compilations containing the Tracks and the Tracks individually are properly classified as audiovisual works, and they should have been registered as such.

Even assuming that the compilations containing the Tracks were registered pursuant to 37 C.F.R. § 202.3(b)(2)(ii)(C), the compilations were still improperly registered. At the time Tennessee Production Center, Inc. applied for copyright protection of the compilations, there was explicit guidance from the Copyright Office that

---

[5] It appears that at some point, Tennessee Production Center, Inc. assigned its copyrights for the Tracks to Piracy Recovery, LLC, who then assigned the copyrights to Phoenix. See ECF No. 1 ¶ 27; ECF No. 10 at 6. However, Phoenix does not make the history of the copyrights' ownership clear.

explained that the compilations containing the Tracks needed to be registered as audiovisual works. The second edition of the Compendium of Copyright Office Practices—the operative edition when Tennessee Production Center, Inc. applied for copyright protection for the compilations—instructed that sound recordings should be registered under the SR classification. 2 Compendium of Copyright Office Practices § 604 at 600-3 (1998). By contrast, the Compendium instructed that "other audiovisual works" should be registered under the PA classification. Id. It further stated that "[t]he audio portions of audiovisual works, such as a motion picture soundtrack or an audio cassette accompanying a filmstrip, are considered an integral part of the audiovisual work and are registrable in Class PA rather than Class SR." Id. § 702.05 at 700-3. The guidance also clearly stated that "[s]ounds accompanying audiovisual works, whether physically integrated with the audiovisual work (such as a soundtrack on a motion picture) or fixed on a separate tape, disk, or other such object, are not sound recordings under the statute." Id. § 492 at 400-33. The example the Compendium gave of work that should be registered as an audiovisual work, not a sound recording, is a multimedia kit containing a filmstrip and an accompanying cassette tape. Id.

Here, the sound recording portions of the Tracks are the sounds accompanying the audiovisual components, so pursuant to the Copyright Act and the Copyright Office's interpretation of it, the compilations and the Tracks are audiovisual works, not sound recordings. Moreover, the Compendium's example of an audiovisual work is analogous to the Tracks. The Tracks consist of visual display components, like a filmstrip, and accompanying sounds, like an accompanying cassette tape. Given the explicit guidance for registering work that contains both sound recordings and audiovisual works, it is clear

that the compilations containing the Tracks should have been registered as audiovisual works.

### B. Single Work Registration

Kohn alternatively argues that the Tracks could not have been registered as a single work as permitted by 37 C.F.R. § 202.3(b)(4) because sound recordings and audiovisual works are not eligible to be registered together under a single registration. ECF No. 9-1 at 5. Section 202.3(b)(4) allows all of the copyrightable elements of a single published work to be registered on a single copyright application when the elements of the work are (1) recognizable as self-contained works; (2) included in a single unit of publication; and (3) claimed by the same copyright claimant. 37 C.F.R. § 202.3(b)(4)(i)(A); see also Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 205 (3d Cir. 2005) (explaining when single work registration applies). In other words, single work registration may be used when a claimant wants to register a group of self-contained works under one copyright registration as long as the group is published in a single unit and each work is claimed by the same claimant. While the copyright regulations permit this type of registration, they provide no further guidance on how it applies in conjunction with the classification of works. As such, Kohn interprets the regulations to mean that, per the regulation providing instructions about registering sound recordings, a single sound recording copyright may also apply only to "literary, dramatic, and musical works embodied in phonorecords," and as such, "[a]udiovisual works are effectively excluded" from being registered with sound recordings as a single work. Id. (citing 37 C.F.R. § 202.3(b)(iv)). Phoenix responds that this is a misinterpretation of the regulations because classifications of work were created solely for administrative

registration purposes and "do[] not dictate whether multiple copyrightable elements contained within a single work may be considered registered" as a single work. ECF No. 10 at 6. Moreover, Phoenix argues that under single work registration, each Track is individually registered because the karaoke compilations as a whole were registered. Id. at 4. Then Phoenix separately argues that because the compilations containing the Tracks are published on CD+G discs and contain multiple copyrightable elements, namely audiovisual works and sound recordings, both the audiovisual works and sound recordings within the compilation containing the Tracks are properly registered as a single work. Id. at 6–7.

A review of the relatively sparse case law discussing single work registration suggests that this type of registration is only applicable when the copyrightable elements within a single work all fall within the same type of work; for example, when all of the elements within a single work are sound recordings. See United Fabrics Intern., Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1295 (9th Cir. 2011) (allowing registration of a group of fabric designs as single registration); Kay Berry, Inc., 421 F.3d at 206 (allowing single work registration for garden accent rocks published in the same catalog); Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 492 (S.D.N.Y. 2008) (holding that single work registration of a jewelry collection results in each piece of jewelry also being registered); Ocasio v. Alfano, 592 F. Supp. 2d 242, 244–45 (D.P.R. 2008) (holding that in a collection of songs registered as a single work, each song within the collection was also validly registered); Idearc Media Corp. v. Nw. Directories, Inc., 623 F. Supp. 2d 1223, 1230–31 (D. Or. 2008) (holding that because a directory with individual display ads was properly registered, each ad was also registered).

Phoenix first argues that registering each karaoke track <u>compilation</u> as a single work also registers each individual track within the compilations, including the Tracks. ECF No. 10 at 4. The court agrees with this interpretation of single work registration. The compilations include multiple self-contained works, which are the individual karaoke tracks; each compilation is sold as a unit; and the copyright claimant, Tennessee Production Center, Inc., is the same for each karaoke track. However, as discussed in Section III.A, karaoke tracks are audiovisual works, regardless of whether they are registered individually or as a compilation. Here, the compilations were registered as sound recordings. As such, the compilations were not properly registered, meaning the individual karaoke tracks, including the Tracks, were not properly registered.

Next, Phoenix asserts another interpretation of single work registration. Phoenix argues that registering the sound recording elements of the compilations also registered the audiovisual elements of the compilations. ECF No. 10 at 6. This argument is incompatible with the case law interpreting single work registration. As discussed above, single work registration is permissible when a copyright claimant wishes to register a group of the same type of work, e.g., audiovisual work, to avoid individually registering each work. For example, if a CD consisting of several sound recordings is registered as a sound recording, copyright protection will exist for both the CD and the individual sound recordings contained within the CD. Or in the instant case, if the karaoke track compilations were properly registered as audiovisual works, each individual karaoke track would also be registered as an audiovisual work using single work registration. By contrast, Phoenix incorrectly claims that by registering its compilations as sound recordings, single work registration protects both the sound recordings and the

13

audiovisual works within the compilations. This does not comport with the court's understanding of single work registration. Furthermore, the parties point to no case law to suggest that single work registration applies when a single work has multiple copyrightable elements that belong in different classes of work, such as sound recording and audiovisual work, as is the case in the Tracks.

Phoenix cannot rely on single work registration to avoid the fact that the Tracks were incorrectly registered as only sound recordings, even though they contain both audiovisual and sound recording elements and should have been registered as audiovisual works. Therefore, the audiovisual components and sound recording components of the Tracks are not properly registered together as a single work. Without valid copyright registration of the Tracks, Phoenix may not bring an action alleging infringement of the Tracks' copyright.

### IV. CONCLUSION

For the foregoing reasons the court **GRANTS** Kohn's motion to dismiss.

**AND IT IS SO ORDERED.**

                              **DAVID C. NORTON**
                              **UNITED STATES DISTRICT JUDGE**

**September 27, 2018**
**Charleston, South Carolina**